# EXHIBIT A

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

KENDRA MACON et. al,

Plaintiff,

vs.

FORD MOTOR COMPANY,

Defendants.

IN THE COURT OF COMMON PLEAS

FIFTH JUDICIAL CIRCUIT

Case No.

**SUMMONS**

TO:   THE DEFENDANT(S) ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is hereby served upon you and to serve a copy of your Answer to the said Complaint on the subscriber, David A. Maxfield, Esquire, at his office at P.O. Box 11865, Columbia, South Carolina 29211, within thirty (30) days after service hereof, exclusive of the date of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the court for the relief demanded in the Complaint.  If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded in the Complaint.

DAVE MAXFIELD, ATTORNEY, LLC

s/ David A. Maxfield
Dave Maxfield, Esq., SC Bar No. 7163
P.O. Box 11865
Columbia, SC 29211
(803) 509-6800
(855) 299-1656 (fax)
dave@consumerlawsc.com

DATED: May 4, 2021
Columbia, South Carolina

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| COUNTY OF RICHLAND | ) FOR THE FIFTH JUDICIAL CIRCUIT |

| | |
|---|---|
| KENDRA MACON, et al., | ) |
| Plaintiffs, | ) **COMPLAINT** |
| v. | ) |
| | ) **(Jury Trial Requested)** |
| FORD MOTOR COMPANY, | ) |
| Defendant. | ) |

1.    Between 2017 and 2019, Ford Motor Company ("Ford") manufactured, sold, and advertised two low-priced and fuel-efficient automobiles: The Ford Fiesta and Ford Focus.

2.    Ford continues to manufacture, sell, and advertise for sale the Fiesta and Focus despite thousands of complaints and repairs signifying defects with these automobiles.

3.    In fact, Ford has even acknowledged that it has taken shortcuts in manufacturing its automobiles after it had conducted an internal investigation in 2012.[1]

4.    Plaintiffs Barbara Bailey, Deneice Campbell, Jayda Chisolm, Sydney Dash, Joseph Dickson, Angela Dorsey, Douglas Douds, Jason Eugene, Edward Everitt, Dorothy Fallon, Elsie Green, Tiffany Hudson, Spencer Lieberman, Kendra Macon, David McAllister, Keith Moore, Benjamin Mosier, Matthew Myers, Rita Parkison, David Reed, April Robinson, Michele Rowell, Sue Sims, Tonya Taylor, Gabrielle Thompkins, and Jeffrey Wood (collectively, "Plaintiffs"), purchased defective 2017–2019 Fiesta and Focus models manufactured, sold, and advertised for sale by Ford.

---

[1] https://www.freep.com/in-depth/money/cars/ford/2019/07/11/ford-focus-fiesta-transmission-defect/1671198001/ (last visited April 16, 2021).

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

5.      All Plaintiffs were unaware of any defects existing in their Fiesta and Focus automobiles upon purchase.

6.      The most pervasive defect occurred in the PowerShift automatic transmission ("PowerShift"). Ford designed, marketed, and represented the PowerShift as a more advanced and fuel-efficient alternative to a traditional manual or automatic transmission. As such, the PowerShift was marketed and sold as an option that added over $1,000 to each automobile's purchase price.

7.      Ford also touted that it had designed the PowerShift to meet heightened governmental and consumer expectations for fuel economy, performance, and efficiency. According to Ford's press release dated March 29, 2010, "PowerShift with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the automobile. This transmission requires no regular maintenance."[2]  Unfortunately, that was not the case.

8.      The owner's manual for Plaintiffs' cars also stated as follows:

> **PowerShift Fuel Efficient Transmission**
> Your vehicle has been designed to improve fuel economy by reducing fuel usage while coasting or decelerating. When you take your foot off the accelerator pedal and the vehicle begins to slow down, the torque converter clutch locks up and aggressively shuts off fuel flow to the engine while decelerating. This fuel economy benefit may be perceived as a light to medium braking sensation when removing your foot from the accelerator pedal.

9.      Despite Ford's representations, the PowerShift contains several design and/or manufacturing defects that cause, among other problems, transmission slips, buckling, kicking,

---

[2] https://www.prnewswire.com/news-releases/powershift-transmission-production-begins-driving-ford-small-car-fuel-economy-leadership-89373007.html (last visited April 6, 2021).

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty in stopping the automobile.

10.     The PowerShift's defects also led to incredibly dangerous driving experiences for all Plaintiffs, including, but not limited to, their automobiles lurching forward and/or suddenly losing acceleration mid-drive.

11.     Problems with the PowerShift also wore out each automobile's components, including the Dual Clutch Transmission's clutch plates, resulting in premature transmission failure. To fix these issues, Plaintiffs spent thousands of dollars on expensive repairs, which included the complete replacement of their respective automobiles' transmissions.

12.     At the time of sale, Ford knew about and concealed from Plaintiffs defects with the PowerShift, along with its attendant dangerous safety and drivability problems.[3] For many Plaintiffs, Ford continued to conceal these defects at the time of repair as well. In fact, Ford either refused to acknowledge the existence of these defects or performed ineffectual software upgrades that simply masked the defects but did not repair them.

13.     The PowerShift was not the only defective component in Plaintiffs' automobiles. Many Plaintiffs were also unaware that the fuel tanks in their respective Focus automobiles were susceptible to deformation given a powertrain software issue. This particular defect arose because the canister purge valve, which circulates fuel vapor, was susceptible of being caught open. Furthermore, the powertrain control module, which was meant to detect this susceptibility, also malfunctioned. As a result, the fuel tank in certain Focus automobiles became deformed given excessive vacuum. This caused Plaintiffs' automobiles to stall mid-drive, and many Plaintiffs' lives (and those around them) were threatened as a result.

---

[3] https://www.freep.com/in-depth/money/cars/ford/2019/07/11/ford-focus-fiesta-transmission-defect/1671198001/ (last accessed April 5, 2021).

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

14.    Other problems with Plaintiffs' Fiesta and Focus automobiles included malfunctioning electrical and entertainment systems as well.

15.    All Plaintiffs were injured as a result of Ford's breach of warranty and misrepresentations. These injuries include, but are not limited to, pecuniary losses, loss in the use of the automobiles they purchased from Ford, premature loss of value in the automobiles they purchased from Ford, and loss of time. By selling defective automobiles to Plaintiffs at full price, Ford was also unjustly enriched at Plaintiffs' expense.

16.    Plaintiffs, by and through their attorneys, bring this action for damages against Ford for its deceitful misconduct relating to its design, manufacture, sale, and lease of the 2017–2019 Fiesta and Focus vehicles that caused Plaintiffs the damages asserted in this Complaint.

## PARTIES

17.    Plaintiff Barbara Bailey is a resident of York, South Carolina and an owner of a 2019 Ford Fiesta, purchased at a Ford authorized dealership in York, South Carolina.

18.    Plaintiff Deneice Campbell is a resident of Charleston, South Carolina and an owner of a 2017 Ford Fiesta, purchased at a Ford authorized dealership in Charleston, South Carolina.

19.    Plaintiff Jayda Chisolm is a resident of Camden, South Carolina and an owner of a 2018 Ford Focus, purchased at a Ford authorized dealership in Lugoff, South Carolina.

20.    Plaintiff Sydney Dash is a resident of Anderson, South Carolina and an owner of a 2017 Ford Focus, purchased at a Ford authorized dealership in Anderson, South Carolina.

21.    Plaintiff Joseph Dickson is a resident of Orangeburg, South Carolina and an owner of a 2017 Ford Focus, purchased at a Ford authorized dealership in Bennettsville, South Carolina.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

22.     Plaintiff Angela Dorsey is a resident of Moncks Corner, South Carolina and an owner of a 2017 Ford Focus, purchased at a Ford authorized dealership in Columbia, South Carolina.

23.     Plaintiff Douglas Douds is a resident of Honea Path, South Carolina and an owner of a 2019 Ford Fiesta, purchased at a Ford authorized dealership in Cullman, Alabama.

24.     Plaintiff Jason Eugene is a resident of Cordova, South Carolina and an owner of a 2017 Ford Fiesta, purchased at a Ford authorized dealership in Orangeburg, South Carolina.

25.     Plaintiff Edward Everitt is a resident of Myrtle Beach, South Carolina and an owner of a 2019 Ford Fiesta SE, purchased at a Ford authorized dealership in Fayetteville, North Carolina.

26.     Plaintiff Dorothy Fallon is a resident of Greenwood, South Carolina and an owner of a 2017 Ford Focus, purchased at a Ford authorized dealership in Honea Path, South Carolina.

27.     Plaintiff Elsie Green is a resident of Dillon, South Carolina and an owner of a 2018 Ford Focus, purchased at a Ford authorized dealership in Lumberton, North Carolina.

28.     Plaintiff Tiffany Hudson is a resident of Orangeburg, South Carolina and an owner of a 2018 Ford Focus, purchased at a Ford authorized dealership in Orangeburg, South Carolina.

29.     Plaintiff Spencer Lieberman is a resident of Piedmont, South Carolina and an owner of a 2017 Ford Focus, purchased at a Ford authorized dealership in Easley, South Carolina.

30.     Plaintiff Kendra Macon is a resident of Eastover, South Carolina and an owner of a 2017 Ford Focus S, purchased at a Ford authorized dealership in Columbia, South Carolina.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

31.     Plaintiff David McAllister is a resident of Florence, South Carolina and an owner of a 2018 Ford Fiesta, purchased at a Ford authorized dealership in Florence, South Carolina.

32.     Plaintiff Keith Moore is a resident of McColl, South Carolina and an owner of a 2018 Ford Focus, purchased at a Ford authorized dealership in Bennettsville, South Carolina.

33.     Plaintiff Benjamin Mosier is a resident of Lancaster, South Carolina and an owner of a 2019 Ford Fiesta SE, purchased at a Ford authorized dealership in Lancaster, South Carolina.

34.     Plaintiff Matthew Myers is a resident of Charlotte, North Carolina and an owner of a 2018 Ford Focus, purchased at a Ford authorized dealership in Rockhill, South Carolina.

35.     Plaintiff Rita Parkison is a resident of Moncks Corner, South Carolina and an owner of a 2018 Ford Focus, purchased at a Ford authorized dealership in Summerville, South Carolina.

36.     Plaintiff David Reed is a resident of Orangeburg, South Carolina and an owner of a 2017 Ford Focus, purchased at a Ford authorized dealership in Orangeburg, South Carolina.

37.     Plaintiff April Robinson is a resident of Florence, South Carolina and an owner of a 2019 Ford Focus, purchased at a Ford authorized dealership in Winder, Georgia.

38.     Plaintiff Michele Rowell is a resident of Nichols, South Carolina and an owner of a 2019 Ford Fiesta, purchased at a Ford authorized dealership in Conway, South Carolina.

39.     Plaintiff Sue Sims is a resident of Spartanburg, South Carolina and an owner of a 2017 Ford Fiesta, purchased at a Ford authorized dealership in Spartanburg, South Carolina.

40.     Plaintiff Tonya Taylor is a resident of Cola, South Carolina and an owner of a 2017 Ford Fiesta, purchased at a Ford authorized dealership in Cola, South Carolina.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

41.     Plaintiff Gabrielle Thompkins is a resident of Myrtle Beach, South Carolina and an owner of a 2017 Ford Focus, purchased at a Ford authorized dealership in the same city.

42.     Plaintiff Jeffrey Wood is a resident of Johns Island, South Carolina and an owner of a 2019 Ford Fiesta, purchased at a Ford authorized dealership in Charleston, South Carolina.

43.     All Plaintiffs are individuals who, at all times relevant hereto, purchased and submitted to repair their automobiles in the State of South Carolina.

44.     Ford is a foreign corporation authorized to do business in the State of South Carolina and is engaged in manufacturing, selling, and distributing automobiles and related equipment and services. Ford is also in the business of marketing, supplying, and selling written warranties to the public at large through a system of authorized dealership. Ford does business in all counties of the State of South Carolina.

## JURISDICTION AND VENUE

45.     The Court has subject-matter jurisdiction over the claims in this lawsuit under S.C. Const. Ann. Art. V § 11 and S.C. Code Ann. § 14-5-350.

46.     The Court has personal jurisdiction over Ford because it does business in South Carolina.

47.     Venue is also permissible in this Court under S.C. Code Ann. § 15-7-30 because Ford lives, resides, or does business in Richland County, South Carolina, and the acts and omissions that are the subject of this action occurred in Richland County, South Carolina.

## FACTUAL ALLEGATIONS

### Factual Allegations for Barbara Bailey

48.     The preceding paragraphs are incorporated by reference as if fully restated herein.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

49.    On December 21, 2019, Plaintiff Barbara Bailey ("Bailey"), a resident of York, South Carolina, purchased a 2019 Ford Fiesta (VIN No. ending in 161017) from a Ford authorized dealership in the same city.

50.    Bailey's Fiesta has malfunctioned since January 2020. Specifically, the Fiesta continues to stall and emit a rubbing sound every time it accelerates.

51.    Bailey visited a Ford service center on August 7, 2020 to fix these problems. During this visit, Bailey noted that the Fiesta hesitates on acceleration, stalls, and emits a rubbing sound when shifting gears. After test driving the Fiesta, one of Ford's service technicians was unable to duplicate Bailey's concerns, so no repairs were conducted at that time.

52.    Bailey still experiences problems with the Fiesta despite having visited one of Ford's service centers for repair.

**Factual Allegations for Deneice Campbell**

53.    The preceding paragraphs are incorporated by reference as if fully restated herein.

54.    On October 13, 2017, Plaintiff Deneice Campbell ("Campbell"), a resident of Charleston, South Carolina, purchased a 2017 Ford Fiesta (VIN No. ending in 1647845) from a Ford authorized dealership in the same city.

55.    Since she purchased the vehicle, Campbell has experienced numerous issues with her Fiesta, including electrical, battery, and stalling problems.

56.    Campbell visited a Ford service center to fix these problems; however, Campbell still experience issues with the Fiesta's engine light and emissions system, and the car also has stalling problems and various other electrical problems.

**Factual Allegations for Jayda Chisolm**

57.    The preceding paragraphs are incorporated by reference as if fully restated herein.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

58.     Sometime in 2018, Plaintiff Jayda Chisolm ("Chisolm"), a resident of Camden, South Carolina, purchased a 2018 Ford Focus (VIN No. ending in 307468) from a Ford authorized dealership in Lugoff, South Carolina.

59.     Chisolm's Focus has had issues with the transmission. Specifically, the Focus hesitates and skips when driven, and it often fails to brake at stop lights.

60.     Since the issues with the Focus's transmission arose, Chisolm has taken the vehicle in for repair at least three times. Nevertheless, Chisolm still experiences issued with the Focus's transmission, and so she no longer drives the car because she is afraid of potential safety issues while she is on the road.

**Factual Allegations for Sydney Dash**

61.     The preceding paragraphs are incorporated by reference as if fully restated herein.

62.     On July 22, 2017, Plaintiff Sydney Dash ("Dash"), a resident of Anderson, South Carolina, purchased a 2017 Ford Focus (VIN No. ending in 301838) from a Ford authorized dealership in the same city.

63.     Dash first reported problems with the Focus while visiting a Ford service center on May 16, 2019. There, Dash indicated that the Focus was jerking upon acceleration. After inspecting the automobile, a Ford service technician purportedly repaired and replaced the transmission's components.

64.     Despite having serviced the Focus in 2019, Dash was still experiencing problems with her car. On April 28, 2020, Dash took the Focus for repairs, again, and indicated that the car was still jerking upon acceleration. Once again, the service technician purportedly repaired and replaced the transmission's components.

65.     Despite these repairs, Dash still experiences problems with the Focus today.

9

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

**Factual Allegations for Joseph Dickson**

66.    The preceding paragraphs are incorporated by reference as if fully restated herein.

67.    In November 2017, Plaintiff Joseph Dickson ("Dickson"), a resident of Orangeburg, South Carolina, purchased a 2017 Ford Focus (VIN No. ending in 336728) from a Ford authorized dealership in Bennettsville, South Carolina.

68.    Since the purchase, Dickson's Focus has experienced various problems. For example, the car stalls, jerks upon acceleration, slows when pulling out, and emits humming noises.

69.    Dickson called one of Ford's service centers to remedy these problems. However, the service center told Dickson that he would be charged for a mere inspection of the Focus.

70.    Dickson could not afford the inspection, and so he still experiences the above-mentioned problems with the Focus.

**Factual Allegations for Angela Dorsey**

71.    The preceding paragraphs are incorporated by reference as if fully restated herein.

72.    On November 29, 2017, Plaintiff Angela Dorsey ("Dorsey"), a resident of Moncks Corner, South Carolina, purchased a 2017 Ford Focus (VIN No. ending in 336671) from a Ford authorized dealership in Columbia, South Carolina.

73.    Within three weeks of the purchase, Dorsey's Focus started to jerk and hesitate upon acceleration.

74.    Dorsey visited one of Ford's service centers on November 29, 2018 to fix these problems. But the service technician at this center was unable to duplicate Dorsey's concerns.

75.    Dorsey still experiences the above-mentioned problems with the Focus.

**Factual Allegations for Douglas Douds**

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

76.     The preceding paragraphs are incorporated by reference as if fully restated herein.

77.     On July 24, 2019, Plaintiff Douglas Douds ("Douds"), a resident of Honea Path, South Carolina, purchased a 2019 Ford Fiesta S (VIN No. ending in 131465) from a Ford authorized dealership in Cullman, Alabama.

78.     Douds first reported problems with the Fiesta while visiting one of Ford's service centers on August 4, 2020. There, Douds indicated that the Fiesta would shut off on numerous occasions after coming to a full stop. After inspecting the Fiesta, a service technician was unable to duplicate Douds' concerns.

79.     Despite having visited Ford's service department, Douds still experiences problems with the Fiesta.

80.     Not only does the Fiesta die after coming to a complete stop, but it also dies mid-drive. On one occasion, the Fiesta stalled while Douds was traveling 70 m.p.h. on the interstate.

81.     As a result, Douds was forced to keep the Fiesta parked at home while he uses his son's vehicle to commute to work.

**Factual Allegations for Jason Eugene**

82.     The preceding paragraphs are incorporated by reference as if fully restated herein.

83.     On October 1, 2018, Plaintiff Jason Eugene ("Eugene"), a resident of Cordova, South Carolina, purchased a 2017 Ford Fiesta (VIN No. ending in 169162) from a Ford authorized dealership in Orangeburg, South Carolina.

84.     Eugene first reported problems with the Fiesta's transmission on March 5, 2020, while visiting one of Ford's service centers in Orangeburg, South Carolina. There, Eugene indicated that the transmission would slip on occasion. Ford's service technician then purportedly corrected the problem.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

85. But Eugene revisited the service center on July 28, 2020, because the transmission still felt as if it was dragging. Upon further inspection, the service technician was unable to duplicate Eugene's concerns. And Eugene still experiences issues with his Fiesta.

**Factual Allegations for Edward Everitt**

86. The preceding paragraphs are incorporated by reference as if fully restated herein.

87. On September 27, 2019, Plaintiff Edward Everitt ("Everitt"), a resident of Myrtle Beach, South Carolina, purchased a 2019 Ford Fiesta SE (VIN No. ending in 134515) from a dealership in Fayetteville, North Carolina.

88. Everitt has visited three of Ford's service centers on at least ten separate occasions to repair problems with the Fiesta.

89. Everitt first reported problems with the Fiesta on October 30, 2019, while visiting one of Ford's service centers in Myrtle Beach, South Carolina. There, Everitt indicated that, among other things, the Fiesta's headlights were hazy and that its rear brakes squeaked and failed. The technician, however, was unable to replicate Everitt's concerns during this visit.

90. On December 3, 2019, Everitt visited another Ford service center in Conway, South Carolina, because he was having similar problems with the car. There, Everitt indicated that the Fiesta's cooling fan ran constantly, that the brake pedal was malfunctioning, that the front tires were cupping on the outside edge, that the headlights were hazy, and that the engine emitted a knocking noise. Everitt also indicated that the Fiesta would jolt forward whenever he took his foot off the brake pedal. Despite these concerns, service technicians were unable to duplicate Everitt's concerns.

91. Accordingly, Everitt still experiences the above-mentioned problems with the Fiesta despite having taken it to Ford's service centers on at least ten occasions.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

**Factual Allegations for Dorothy Fallon**

92.     The preceding paragraphs are incorporated by reference as if fully restated herein.

93.     On March 28, 2017, Plaintiff Dorothy Fallon ("Fallon"), a resident of Greenwood, South Carolina, purchased a 2017 Ford Focus (VIN No. ending in 201914) from a Ford authorized dealership in Honea Path, South Carolina.

94.     Two months after the purchase, Fallon's Focus began to have a variety of problems. The Focus stalls and rolls back upon acceleration, its fuel gauge is erratic, and its Distance-to-Empty ("DTE") reading is inaccurate.

95.     Fallon visited one a Ford service center on February 14, 2019, because of an open recall on the Focus's fuel tank deformation. After inspecting the Focus, the service technician detected no problems, so no repairs were done at that time.

96.     Fallon even visited another Ford service center on November 11, 2019 to fix a shuddering and hesitating transmission, as well as an irregular DTE gauge. After inspecting the Focus, one the technician found excessive shudder and purportedly repaired the transmission. The service technician also replaced the Focus's battery. Fallon had to pay $149.55 to repair these issues.

97.     However, the problems with Fallon's Focus persist to this day.

**Factual Allegations for Elsie Green**

98.     The preceding paragraphs are incorporated by reference as if fully restated herein.

99.     On March 20, 2018, Plaintiff Elsie Green ("Green"), a resident of Dillon, South Carolina, purchased a 2018 Ford Focus (VIN No. ending in 220261) from a Ford authorized dealership in Lumberton, North Carolina.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

100.     Since the purchase, Green's Focus has exhibited various problems. Specifically, the Focus has been making noises while not in use and it has been sputtering mid-drive. Its horn is also inoperable.

101.     In September 2019, Green called one of Ford's authorized dealerships to ask whether there was a recall on the Focus's transmission. But Green was told there were no recalls.

102.     Green has been unable to take the vehicle in for repair, and the problems with her Focus persist to this day.

**Factual Allegations for Tiffany Hudson**

103.     The preceding paragraphs are incorporated by reference as if fully restated herein.

104.     In October 2018, Plaintiff Tiffany Hudson ("Hudson"), a resident of Orangeburg, South Carolina, purchased a 2018 Ford Focus (VIN No. ending in 319165) from a Ford authorized dealership in the same city.

105.     Hudson visited one of Ford's service centers on December 16, 2019, because the check engine light was on and the fuel gauge had the incorrect reading. After an inspection, one of Ford's service technicians reprogrammed the Focus. However, no repairs were conducted on the fuel gauge because Hudson's concerns with it could not be duplicated.

106.     Despite having visited one of Ford's service centers, Hudson continues to experience problems with her Focus—it stalls, has problems shifting gears, and has a fuel gauge that still malfunctions.

**Factual Allegations for Spencer Lieberman**

107.     The preceding paragraphs are incorporated by reference as if fully restated herein.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

108.    On November 22, 2017, Plaintiff Spencer Lieberman ("Lieberman"), a resident of Piedmont, South Carolina, purchased a 2017 Ford Focus (VIN No. ending in 337405) from a Ford authorized dealership in Easley, South Carolina.

109.    Since the purchase, Lieberman's Focus has had various problems. These problems include a slow response time upon acceleration and a hesitating transmission.

110.    Despite having visited at least one Ford service center, Lieberman still experiences problems with the Focus's transmission.

**Factual Allegations for Kendra Macon**

111.    The preceding paragraphs are incorporated by reference as if fully restated herein.

112.    On June 17, 2017, Plaintiff Kendra Macon ("Macon"), a resident of Eastover, South Carolina, purchased a 2017 Ford Focus S (VIN No. ending in 213089) from a Ford authorized dealership in Columbia, South Carolina.

113.    Since the purchase, Macon's Focus has experienced various problems. Specifically, the Focus has been stalling, shutting off, shuddering, and overheating.

114.    Macon has visited two Ford service centers on at least five different occasions to fix the above-mentioned problems.

115.    Nevertheless, the problems with Macon's Focus persist to this day.

**Factual Allegations for David McAllister**

116.    The preceding paragraphs are incorporated by reference as if fully restated herein.

117.    On October 26, 2018, Plaintiff David McAllister ("McAllister"), a resident of Florence, South Carolina, purchased a 2018 Ford Fiesta (VIN No. ending in 113339) from a Ford authorized dealership in the same city.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

118.    Since the purchase, McAllister's Fiesta has experienced a couple of problems—it has been jerking and has been slow to change gears.

119.    The problems with the transmission in McAllister's Fiesta persist to this day.

**Factual Allegations for Keith Moore**

120.    The preceding paragraphs are incorporated by reference as if fully restated herein.

121.    On August 23, 2018, Plaintiff Keith Moore ("Moore"), a resident of McColl, South Carolina, purchased a 2018 Ford Focus (VIN No. ending in 256239) from a Ford authorized dealership in Bennettsville, South Carolina.

122.    Moore's Focus has been stalling and jerking since it was purchased.

123.    Moore still experiences the above-mentioned problems with the Focus despite having visited one of Ford's service centers for repair.

**Factual Allegations for Benjamin Mosier**

124.    The preceding paragraphs are incorporated by reference as if fully restated herein.

125.    On March 29, 2019, Plaintiff Benjamin Mosier ("Mosier"), a resident of Lancaster, South Carolina, purchased a 2019 Ford Fiesta SE (VIN No. ending in 125613) from a Ford authorized dealership in the same city.

126.    Mosier first reported problems with the Fiesta on October 4, 2019, while visiting one a Ford service center in Lancaster, South Carolina. There, Mosier indicated that the Fiesta's A/C unit would erratically change from hot to cold temperatures. After the inspection, one of Ford's service technicians repaired and replaced some of the A/C's components.

127.    On August 10, 2020, Mosier revisited one of Ford's service centers because the Fiesta's transmission was slipping when switching from first to second gear. Since the service technician was unable to duplicate Mosier's concerns, no repairs were conducted.

128.    The transmission in Mosier's Fiesta continues to slip, shudder, buckle, and jerk upon acceleration.

**Factual Allegations for Matthew Myers**

129.    The preceding paragraphs are incorporated by reference as if fully restated herein.

130.    On April 20, 2018, Plaintiff Matthew Myers ("Myers"), a resident of Charlotte, North Carolina, purchased a 2018 Ford Focus (VIN No. ending in 238134) from a Ford authorized dealership in Rockhill, South Carolina.

131.    Since the purchase, Myers's Focus has experienced a variety of problems. Specifically, the Focus's transmission has stuttered upon acceleration, and its entertainment system/backup camera was inoperable.

132.    Myers no longer experiences problems with the Focus's entertainment system/backup camera because it has been fixed by one of Ford's service centers. However, the transmission in Myers's Focus has continued to stutter upon acceleration for more than a year.

133.    On the two occasions in which Myers serviced the Focus's transmission, Myers was told by one of Ford's service centers that the transmission was functioning "within normal operating parameters."

134.    Despite this diagnosis, the transmission in Myers's Focus still stutters.

**Factual Allegations for Rita Parkison**

135.    The preceding paragraphs are incorporated by reference as if fully restated herein.

136.    On January 15, 2020, Plaintiff Rita Parkison ("Parkison"), a resident of Moncks Corner, South Carolina, purchased a 2018 Ford Focus (VIN No. ending in 241841) from a Ford authorized dealership in Summerville, South Carolina.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

137.    Parkison first reported problems with the Focus on January 21, 2020, while visiting one of Ford's service centers in Moncks Corner, South Carolina. There, Parkison indicated that the Focus would shudder upon acceleration. After verifying Parkison's concern, one of Ford's technicians removed and replaced the clutch, among some of the transmission's other components.

138.    A few months later, the Focus's transmission continued to shudder. As such, Parkison revisited Ford's service center in March or April 2020. This time, Parkison was told by a service technician that the shuddering was normal, so no repairs were conducted.

139.    Despite having visited one of Ford's service technicians on at least three different occasions, Parkison still experiences problems with the Focus's transmission.

**Factual Allegations for David Reed**

140.    The preceding paragraphs are incorporated by reference as if fully restated herein.

141.    On August 24, 2017, Plaintiff David Reed ("Reed"), a resident of Orangeburg, South Carolina, purchased a 2017 Ford Focus (VIN No. ending in 306065) from a Ford authorized dealership in the same city.

142.    Reed first reported problems with the Focus on June 29, 2018, while visiting one of Ford's service centers in Orangeburg, South Carolina. There, Reed indicated that something felt loose underneath the Focus. After inspection, one of Ford's service technicians was unable to find any problems with the Focus's transmission. Therefore, no repairs were conducted that day.

143.    Reed revisited the service center again on May 13, 2019, because the Focus's check engine light was on. After an inspection, one of Ford's service technicians replaced the Focus's purge valve. And Reed was charged $256.14 for this service.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

144.    A recall was later issued on July 16, 2019 for the valve that Reed had just a month earlier paid to get replaced.

145.    On February 11, 2020, Reed again revisited the service center because of a failing transmission control module and battery. To fix these problems, the service center replaced the transmission control module at no charge, but it charged Reed $270.30 for the battery.

146.    Reed revisited the service center on July 29, 2020, because the check engine light had reappeared. Noticing the same problem that occurred in May 2019, the service technician replaced the purge valve. This time, the replacement was covered by warranty, so Reed was not charged for that service.

147.    During the same July 2020 visit, Reed reported that the Focus would jerk sometimes. But the service technician was unable to duplicate Reed's concerns, so no repairs were done to remedy that problem.

148.    Currently, Reed's Focus still jerks and stalls due to a faulty transmission.

**Factual Allegations for April Robinson**

149.    The preceding paragraphs are incorporated by reference as if fully restated herein.

150.    On October 30, 2019, Plaintiff April Robinson ("Robinson"), a resident of Florence, South Carolina, purchased a 2019 Ford Focus (VIN No. ending in 207896) from a dealership in Winder, Georgia.

151.    Since Mid-2020, Robinson's Focus has been jerking and overheating whenever it has been driven.

152.    Despite having been serviced, Robinson's Focus still experiences the above-mentioned problems.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

**Factual Allegations for Michele Rowell**

153.    The preceding paragraphs are incorporated by reference as if fully restated herein.

154.    On February 27, 2019, Plaintiff Michele Rowell ("Rowell"), a resident of Nichols, South Carolina, purchased a 2019 Ford Fiesta (VIN No. ending in 113975) from a Ford authorized dealership in Conway, South Carolina.

155.    At the time of purchase, Rowell was led to believe that the Fiesta was a safe and reliable automobile.

156.    However, since the purchase, reports of the defects with the Fiesta's transmission, among its other components, have led Rowell to question the automobile's safety and reliability.

157.    Rowell's Fiesta has substantially decreased in resale value since purchase as a result of the uptick in reports about the automobile's defects.

158.    Nevertheless, Rowell is not currently experiencing any problems with her Fiesta.

**Factual Allegations for Sue Sims**

159.    The preceding paragraphs are incorporated by reference as if fully restated herein.

160.    On August 22, 2017, Plaintiff Sue Sims ("Sims"), a resident of Spartanburg, South Carolina, purchased a 2017 Ford Fiesta (VIN No. ending in 146942) from a Ford authorized dealership in the same city.

161.    Since the end of 2020, Sims's Fiesta has been jerking, has been slow in shifting gears, and has also had issues in starting.

162.    Sims visited one of Ford's service centers on February 9, 2021, where she reported that, among other problems, the Fiesta would not start. After verifying this concern, a technician discovered that the ignition switch, key cylinder, and ignition flange housing were damaged. To repair the damage, the technician cut off the old housing; rebuilt the key cylinder to

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

fit the key; reinstalled the flange, switch, and cylinder; and reinstalled the steering column trim. Sims had to pay over $600.00 for these repairs.

163.    Despite having been serviced, Sims's Fiesta still experiences the above-mentioned problems.

**Factual Allegations for Tonya Taylor**

164.    The preceding paragraphs are incorporated by reference as if fully restated herein.

165.    On April 9, 2021, Plaintiff Tonya Taylor ("Taylor"), a resident of Cola, South Carolina, purchased a 2017 Ford Fiesta (VIN No. ending in 129278) from a dealership in the same city.

166.    Since the purchase, Taylor's Fiesta has had a number of problems. These problems include, but are not limited to, a gas leak that has not yet been corrected and a defective transmission.

167.    Despite having visited one of Ford's service centers on at least two occasions, Taylor is still having problems with the Fiesta.

**Factual Allegations for Gabrielle Thompkins**

168.    The preceding paragraphs are incorporated by reference as if fully restated herein.

169.    On March 7, 2018, Plaintiff Gabrielle Thompkins ("Thompkins"), a resident of Myrtle Beach, South Carolina, purchased a 2017 Ford Focus (VIN No. ending in 336655) from a Ford authorized dealership in the same city.

170.    Thompkins first reported problems with the Focus on June 28, 2018, while visiting one of Ford's service centers in Myrtle Beach, South Carolina. There, Thompkins indicated that the Focus emitted a rattling noise when shifting gears and that there was some hesitation in shifting to first gear and when accelerating.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

171.    Thompkins revisited the same service center on July 10, 2018, because the Focus was still rattling and hesitating. However, the service center found no problems, so no repairs to the transmission were conducted at that time.

172.    Thompkins reported the same transmission problems on October 25, 2018, while revisiting the same service center. This time, Thompkins indicated that the transmission would grind while shifting. To fix this problem, one of Ford's service technicians purportedly repaired and replaced a few of the transmission's components.

173.    Although the Focus was purportedly repaired in October 2018, it was still experiencing the same transmission problems in 2020.

174.    On February 4, 2020, Thompkins revisited Ford's service center because the Focus would shudder upon acceleration. Despite these concerns, the service center noted that everything was normal with the Focus's transmission.

175.    Shortly thereafter, Thompkins continued to experience problems with the Focus's transmission.

176.    On February 28, 2020, Thompkins revisited the same service center because the Focus's transmission had completely failed. In fact, Thompkins was required to tow the Focus all the way from Virginia to repair it. This time, one of Ford's service technicians was able to verify Thompkins's concerns, despite not having done so less than a month ago. The service technician also replaced some of the transmission's components.

177.    On the same occasion, Thompkins indicated that the Focus would fail to start. Verifying this concern, the service technician proceeded to replace the Focus's transmission control module.

22

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

178.    Although Thompkins's Focus had been extensively repaired in 2018 and in early 2020, it was still experiencing the same transmission problems.

179.    On August 22, 2020, Thompkins visited another one of Ford's service centers in Pawleys Island, South Carolina. There, Thompkins indicated that the Focus's transmission stalled and chattered badly upon acceleration. Since the service department was unable to verify these concerns, no repairs were performed.

180.    On September 26, 2020, Thompkins visited the same service center. Again, Thompkins reported that the Focus's transmission would hesitate and shudder. However, since the service center was unable to verify Thompkins's concerns, no repairs were performed at that time. Thompkins was nevertheless required to pay $45 in labor costs just to have the technician inspect the Focus.

181.    The transmission in Thompkins's Focus continues to slip and shudder even though it has been serviced on numerous occasions over the last few years.

**Factual Allegations for Jeffrey Wood**

182.    The preceding paragraphs are incorporated by reference as if fully restated herein.

183.    On May 10, 2019, Plaintiff Jeffrey Wood ("Wood"), a resident of Johns Island, South Carolina, purchased a 2019 Ford Fiesta (VIN No. ending in 131444) from a Ford authorized dealerships in Charleston, South Carolina.

184.    Since the purchase, Wood's Fiesta would fail to shift gears, it would roll backwards on inclines, and it would occasionally fail to accelerate.

185.    Wood has even reached out to one of Ford's service centers to fix the above-mentioned problems. However, the service center would require that the Fiesta stay at its facility for a week, and it refuses to give Wood a loner car in the meantime. As such, Wood and his

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

family would be without a car for that amount of time, plus any number of days it would take to fix the Focus. This would impose too much of a hardship on Wood and his family, who rely on the Focus for their daily commute.

186.    Wood's Fiesta still experiences the above-mentioned problems.

## FOR A FIRST CAUSE OF ACTION

### South Carolina Unfair Trade Practices Act
### (S.C. Code Ann. § 39-5-10 *et seq.*)

187.    Plaintiffs incorporate by reference the relevant facts and allegations above as if fully set forth herein.

188.    The South Carolina Unfair Trade Practices Act ("UTPA") also provides for a private cause of action for any person who suffers any ascertainable loss of money or property due to an unfair or deceptive method, act, or practice. S.C. Ann. § 39-5-140(a).

189.    Pursuant to the UTPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." *Id.* § 39-5-20.

190.    A willful violation of the UTPA occurs "when the party committing the violation knew or should have known that his conduct was a violation of § 39-5-20." *Id.* § 39-5-140(d).

191.    In the course of Ford's business, it willfully failed to disclose and actively concealed that the transmission systems and other components in its 2017–2019 Ford Focus and Ford Fiesta automobiles were defective, as described herein and above.

192.    Accordingly, Ford engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including, but not limited to, representing that the automobiles had characteristics, uses, benefits, and qualities which they did not have; representing that the automobiles were of a particular standard and quality when they were not;

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

and failing to reveal material facts, the omission of which tended to mislead or deceive Plaintiffs, and which facts could not have reasonably been discovered by Plaintiffs.

193.    As described above, Ford's failure to disclose the defects in the transmission systems and other components of Plaintiffs' automobiles only served to deceive Plaintiffs at the time of purchase. Plaintiffs reasonably relied upon Ford's false misrepresentations and had no way of knowing that Ford's representations were false and gravely misleading.

194.    As alleged herein, Ford engaged in sophisticated methods of deception. Plaintiffs did not, and could not, unravel Ford's deception on their own.

195.    Ford's acts and omissions, as set forth above, occurred in the conduct of trade or commerce.

196.    Ford's unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable Plaintiffs. Ford intentionally and knowingly misrepresented material facts regarding the automobiles with an intent to mislead Plaintiffs.

197.    Ford knew or should have known that its conduct violated the UTPA.

198.    Ford owed Plaintiffs a duty to disclose transmission defects because Ford possessed exclusive knowledge regarding those defects and intentionally concealed them from Plaintiffs; purposefully withheld material facts about these defects from Plaintiffs; and made incomplete representations to Plaintiffs regarding the automobiles' transmission systems and other components.

199.    Ford also had a duty to disclose the transmission systems' defects because Plaintiffs relied on Ford's material representations that these systems would help with their automobiles' fuel economy.

200.    Ford's conduct proximately caused Plaintiffs' injuries.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

201.    Plaintiffs were injured and suffered ascertainable losses, injury-in-fact, and actual damages as a proximate result of Ford's conduct, because Plaintiffs overpaid for their automobiles and did not receive the benefit of their bargain. Plaintiffs were also required to service their respective automobiles on various occasions to remedy defects Ford had failed to disclose. Finally, Plaintiffs' automobiles have suffered excessive diminution in value since defects still cause problems that persist with Plaintiffs' automobiles to this day.

202.    Plaintiffs have also suffered intangible losses for which no amount of monetary remedy will suffice in providing relief. Plaintiffs have lived in constant fear whenever they have been out on the road with one of Ford's defective automobiles. No matter how many times some Plaintiffs have serviced these automobiles, they still experience the same issues—constant shuddering, failing motors, etc. These problems continue to pose a risk to the Plaintiffs' safety. In fact, some Plaintiffs have even lived with the constant fear that Ford's automobiles may pose a risk to their children.

203.    These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

204.    Ford's violations present a continuing risk to Plaintiffs as well as to the general public. As such, Ford's unlawful acts and practices complained of herein affect the public interest.

## FOR A SECOND CAUSE OF ACTION

### South Carolina Dealers Act
### (S.C. Code Ann. § 56-15-10 *et seq.*)

205.    The proceeding paragraphs are incorporated by reference as if fully restated herein.

206.    Ford is a "manufacturer" as defined by S.C. Code Ann. § 56-15-10(b).

207.    Ford markets and sells "motor vehicles," as defined by S.C. Code Ann. § 56-15-10(a), within the state of South Carolina.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

208.    Ford's acts, as described above, constitute unfair and deceptive acts or practices under S.C. Code Ann. § 56-15-30(a).

209.    Ford has engaged in multiple actions in bad faith, which were unconscionable or which caused damages to one or more of the Plaintiffs or to the public, and Ford committed such other violations of Title 56 as may be shown at trial.

210.    As a direct and proximate result of Ford's wrongful acts, Plaintiffs are entitled to a temporary and permanent injunction requiring Ford to immediately refrain from the above conduct, and Plaintiffs are further entitled to double the actual damages Plaintiffs sustained, the costs of this suit, and reasonable attorneys' fees.

211.    Furthermore, due to Ford's knowing or willful conduct, Plaintiffs are entitled to recover punitive damages not to exceed three times the actual damages.

## FOR A THIRD CAUSE OF ACTION

### Breach of Express Warranty
### Pursuant to the Magnuson-Moss Warranty Act
### (15 U.S.C. § 2301 *et seq.*)

212.    The preceding paragraphs are incorporated by reference as if fully restated herein.

213.    Plaintiffs are purchasers of a consumer product who received automobiles during the duration of a written warranty period applicable to the automobiles and who are entitled to the terms of the written warranty to enforce against Ford the obligation of said warranty.

214.    Ford is a person engaged in the business of making a consumer product directly available to Plaintiffs.

215.    The Magnuson-Moss Warranty Act is applicable to Plaintiffs' Complaint because the automobiles Plaintiffs purchased from Ford were manufactured, sold, and purchased after July 4, 1975, and cost in excess of $10.00.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

216.    Plaintiffs' purchase of their respective automobiles included written warranties for any non-conformities or defects in material or workmanship. These warranties constituted a written undertaking to repair each automobile or take other remedial actions, free of charge to each Plaintiff, in the event Ford failed to meet the specifications set forth in that undertaking.

217.    Specifically, Ford provided all purchasers and lessees with a "Bumper to Bumper" Limited Warranty and Powertrain Limited Warranty with the purchase or lease of each automobile.

218.    In its Bumper to Bumper Limited Warranty, Ford expressly warranted that its dealers would, "without charge, repair, replace, or adjust all parts on [Plaintiffs' automobiles] that malfunction[ed] or fail[ed] during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship" if the automobiles were properly operated, maintained, and taken to a dealership for repair during the warranty period.

219.    Ford expressly warranted that it would cover listed powertrain components under its Powertrain Limited Warranty, including transmission components (i.e., the transmission's ". . . internal parts, clutch cover, seals and gaskets, torque converter, transfer case . . . , transmission case, transmission mounts") "for five years or 60,000 miles, whichever occur[ed] first."

220.    Contrary to these warranties, Plaintiffs' automobiles, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs with reliable, durable, and safe transportation.

221.    Instead, the automobiles were defective, including, but not limited to, their transmissions' defective design.

222.    These warranties were the foundation of the bargain forming the contract between Plaintiffs and Ford for the sale of an automobile to each Plaintiff.

223.    Plaintiffs purchased their respective automobiles relying on Ford's written

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

warranties. Plaintiffs were also induced to purchase their respective automobiles given these warranties.

224.     Plaintiffs have met all of Ford's obligations and preconditions as set forth in its written warranties.

225.     However, Ford has refused to honor its express warranties by charging some Plaintiffs for the services done to repair their automobiles' defects.

226.     Ford's service centers have also purported to repair the automobiles by replacing defective components with similarly defective components and/or instituting temporary fixes, which ensured that any defects would manifest outside of each automobile's express warranty period.

227.     Specifically, Ford falsely informed Plaintiffs that there were no problems with their automobiles, performed ineffective software updates, or replaced defective components with equally defective components, without actually repairing Plaintiffs' automobiles.

228.     Plaintiffs have suffered damages as a direct and proximate result of Ford's failure to comply with its express written warranties. Therefore, Plaintiffs are entitled to bring suit for such damages and other legal and equitable relief.

### FOR A FOURTH CAUSE OF ACTION

**Breach of Implied Warranty**
**Pursuant to the Magnuson-Moss Warranty Act**
**(15 U.S.C. § 2301 *et seq.*)**

229.     Plaintiffs incorporate by reference as if fully restated herein the foregoing relevant paragraphs.

230.     Pursuant to 15 U.S.C. § 2301(7), automobiles purchased by Plaintiffs were subject to an implied warranty of merchantability running from Ford to the intended consumer, the

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

Plaintiffs herein.

231.    Ford is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiffs.

232.    Ford is prohibited from disclaiming or modifying any implied warranty when it makes written warranties to consumers or when it enters into written contracts within 90 days of a purchase to perform services related to the maintenance or repair of automobiles.

233.    Pursuant to 15 U.S.C. § 2308, Plaintiffs' automobiles were impliedly warranted to be substantially free of defects and non-conformities in both material and workmanship, and thereby fit for their ordinary purpose—i.e., safe transportation.

234.    The automobiles were warranted to conform to the descriptions contained within Ford's contracts and labels.

235.    Ford impliedly warranted that the automobiles were of merchantable quality and fit for their normal use. This implied warranty included, among other things: (i) a warranty that the automobiles and their components manufactured, supplied, distributed, and/or sold by Ford were safe and reliable for providing transportation; and (ii) a warranty that the automobiles and their components would be fit for their intended use while the automobiles were being operated.

236.    The above-mentioned defects rendered Plaintiffs' automobiles unfit for the ordinary and essential purpose for which they were intended.

237.    Due to breaches of implied warranty by Ford, Plaintiffs have and continue to suffer various damages.

## FOR A FIFTH CAUSE OF ACTION

### Breach of Express Warranty

238.    Plaintiffs incorporate by reference the allegations contained in the preceding

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

paragraphs of this Complaint.

239.    Ford is a "seller" under S.C. Code Ann. § 36-2-103. Plaintiffs are all "buyers" under the same code provision.

240.    The Ford Focus and Ford Fiesta automobiles constitute "goods" under S.C. Code Ann. § 36-2-105.

241.    Between 2017 and 2019, Ford expressly warranted that the Ford Focus and Ford Fiesta automobiles were of high quality and, at minimum, would actually work properly.

242.    Ford also expressly warranted that, without charging consumers, it would repair and/or replace defects in material and/or workmanship that occurred during the new automobile and certified preowned warranty periods.

243.    Plaintiffs relied on Ford's express warranties when purchasing their automobiles. These warranties and representations were false in that the automobiles were dangerous and unfit for the uses for which they were intended.

244.    Ford breached this warranty by selling to Plaintiffs the automobiles with known defects. Moreover, the automobiles were predisposed to fail prematurely and/or fail to function properly given their diminished quality.

245.    As a result of Ford's actions, Plaintiffs have suffered economic damages including, but not limited to, costly repairs, loss of the automobiles' use, substantial loss in value and resale value of the automobiles, and other related damage.

246.    Ford's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.

247.    Specifically, Ford's warranty limitation is unenforceable because Ford knowingly sold a defective product without informing consumers about the defect.

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

248.    The time limits contained in Ford's warranty period were also unconscionable and inadequate to protect Plaintiffs.

249.    Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Ford.

250.    A gross disparity in bargaining power existed between Ford and Plaintiffs, and Ford knew or should have known that the automobiles were defective at the time of sale.

251.    Plaintiffs complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Ford's conduct described herein.

## FOR A SIXTH CAUSE OF ACTION

### Breach of Implied Warranty
### of Merchantability

252.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

253.    Ford is a "merchant" with respect to automobiles under S.C. Code Ann. § 36-2-104.

254.    The automobiles purchased by Plaintiffs were subject to implied warranties of merchantability pursuant to S.C. Code Ann. § 36-2-314, running from Ford for the benefit of each of the Plaintiffs.

255.    Ford impliedly warranted that the Ford Focus and Ford Focus automobiles, which Ford designed, manufactured, assembled, promoted, and sold to Plaintiffs, were of a merchantable quality and fit and safe for ordinary use.

256.    Ford breached the implied warranty of merchantability, as the automobiles were defective, unmerchantable, and unfit for their ordinary use when sold.

257.    As a direct and proximate result of Ford's wrongful conduct, Plaintiffs have

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

sustained significant economic losses, emotional distress, and other damages. As a direct result, Plaintiffs have expended money and will continue to expend money for the expenses resulting from their defective Ford Focus and Ford Fiesta automobiles.

258.    Plaintiffs are entitled to compensatory damages, equitable damages, and declaratory relief in an amount to be proven at trial.

## FOR A SEVENTH CAUSE OF ACTION

### Unjust Enrichment

259.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

260.    As a direct and proximate result of Ford's failure to disclose known defects and material misrepresentations regarding known defects, Ford has profited through the sale and lease of said automobiles. Although the automobiles were purchased through Ford's agents, the money from the automobile sales flows directly back to Ford.

261.    Additionally, as a direct and proximate result of Ford's failure to disclose known defects and material misrepresentations regarding known defects in the automobiles, Plaintiffs have automobiles that require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Ford.

262.    Ford has therefore been unjustly enriched due to the known defects in the automobiles through the use of funds that earned interest or otherwise added to Ford's profits when said money should have remained with Plaintiffs.

263.    As a result of Ford's unjust enrichment, Plaintiffs suffered damages.

### RELIEF REQUESTED

264.    WHEREFORE, Plaintiffs pray for judgment against Ford as follows:

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

a.    Return of all monies paid or in the alternative applicable damages pursuant to § 2-714 of the S.C. Commercial Code, and all incidental and consequential damages incurred;

b.    Incurred and/or needed costs of repair;

c.    All reasonable attorneys' fees, witness fees and all court costs and other fees incurred;

d.    Monetary relief measured as the greater of actual damages in an amount to be determined at trial and statutory damages in the amount of $500 for each Plaintiff;

e.    Monetary relief measured as the greater of three times actual damages per Plaintiff or $1,000 per Plaintiff because Ford's conduct was committed willfully and knowingly;

f.    An order enjoining Ford from further deceptive distribution, sales, and lease practices with respect to the automobiles, and to remove and replace Plaintiffs' defective automobile components with suitable alternative products; enjoining Ford from selling automobiles with misleading information; compelling Ford to provide Plaintiffs with replacement components that do not contain the defects alleged herein; and/or compelling Ford to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injuries alleged;

g.    A declaration requiring Ford to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures; and

ELECTRONICALLY FILED - 2021 May 04 2:22 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002086

h.     Such other and further relief that the Court deems just and appropriate;

DAVE MAXFIELD, ATTORNEY, LLC

s/ David A. Maxfield

Dave Maxfield, Esq., SC Bar No. 7163
P.O. Box 11865
Columbia, SC 29211
(803) 509-6800
(855) 299-1656 (fax)
dave@consumerlawsc.com

May 4, 2021